IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN BARNES; | : | |
| | : | |
| JAHLIL FRENCH; | : | |
| | : | |
| and | : | |
| | : | |
| ISIAH WHITE | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| POLICE OFFICER | : | No. #13- |
| JEFFREY WALKER (BADGE No. 3730) | : | |
| Individually and as a Police Officer | : | |
| for the City of Philadelphia; | : | |
| | : | |
| POLICE OFFICER | : | |
| JEFFREY G. GALAZKA (BADGE No. 7481) | : | |
| Individually and as a Police Officer | : | **JURY TRIAL DEMANDED** |
| for the City of Philadelphia; | : | |
| | : | |
| POLICE OFFICER | : | |
| CARLOS BUITRAGO (BADGE No. 7209) | : | |
| Individually and as a Police Officer | : | |
| for the City of Philadelphia; | : | |
| | : | |
| POLICE OFFICER | : | |
| GERALD PASSALACQUA  (BADGE No. 7504) | : | |
| Individually and as a Police Officer | : | |
| for the City of Philadelphia; | : | |
| | : | |
| POLICE OFFICER | : | |
| MICHAEL BROWN (BADGE No. 2962) | : | |
| Individually and as a Police Officer | : | |
| for the City of Philadelphia; | : | |
| | : | |
| POLICE OFFICER | : | |
| BRUCE R. CLEAVER, II (BADGE No. 2706) | : | |
| Individually and as a Police Officer | : | |
| for the City of Philadelphia; | : | |

1

POLICE OFFICER                              :
LINWOOD NORMAN (BADGE No. 5214)             :
Individually and as a Police Officer        :
for the City of Philadelphia;               :
                                            :
POLICE OFFICER                              :
(First Name Unk.) JONES (BADGE No. 7253)    :
Individually and as a Police Officer        :
for the City of Philadelphia;               :
                                            :
POLICE OFFICER                              :
TIMOTHY DUNNES (BADGE No. 3133)             :
Individually and as a Police Officer        :
for the City of Philadelphia;               :
                                            :
POLICE OFFICER                              :
(First Name Unk.) CAREY (BADGE No. 6605)    :
Individually and as a Police Officer        :
for the City of Philadelphia;               :
                                            :
SEARGENT                                    :
THOMAS MEEHAN (BADGE No. 250)               :
Individually and as a Police Officer        :
for the City of Philadelphia;               :
                                            :
POLICE OFFICER JOHN DOES 1-25               :
       (BADGE Nos. Presently Unknown)       :
Individually and as Police Officers         :
for the City of Philadelphia;               :
                                            :
POLICE OFFICER JANE DOES 1-25               :
       (BADGE Nos. Presently Unknown)       :
Individually and as Police Officers         :
for the City of Philadelphia;               :
                                            :
and                                         :
                                            :
CITY OF PHILADELPHIA                        :
                                            :
_____Defendants_____ :

## COMPLAINT

## JURISDICTION

1.  Plaintiffs bring this action pursuant to 42 United States Code Section 1983. Jurisdiction is based upon 28 United States Code Sections 1331 and 1343 (a) (1), (3), and (4). Plaintiffs further invoke supplemental jurisdiction under 28 United States Code Section 1367 (a) to hear and decide claims under state law.

## PARTIES

2.  Plaintiff Justin Barnes is an adult male who was at all material times a resident of Philadelphia, Pennsylvania.

3.  Plaintiff Jahlil French is an adult male who was at all material times a resident of Philadelphia, Pennsylvania.

4.  Plaintiff Isiah White is an adult male who was at all material times a resident of Philadelphia, Pennsylvania.

5.  Defendant City of Philadelphia is a Municipality of the Commonwealth of Pennsylvania that owns, operates, manages, directs, and controls the City of Philadelphia Police Department, which employed Defendant Police Officers at all times relevant to this action.

6.  Those Defendant Police Officers who are named in the instant complaint were at all times relevant to this action Officers of the City of Philadelphia Police Department. Most, if not all, of these Defendants were members of the Narcotics Strike Force or other units purportedly dealing with the investigation of illegal narcotics. Each is being sued in his/her individual capacity and as a Police

Officer for the City of Philadelphia. During the course of the incidents described herein, these Defendant Officers were acting under color of state law.

7. Upon information and belief, Defendant Police Officers John Doe 1-25 and Jane Doe 1-25 were at all times relevant to this action Officers of the City of Philadelphia Police Department, most of whom were members of the Narcotics Strike Force or other units dealing with the purported investigation of illegal narcotics and whose identities are presently unknown but are expected to be determined with reasonable certainty during discovery. Each is being sued in his/her individual capacity and as a Police Officer for the City of Philadelphia. During the course of the incidents described herein, these Defendant Officers were acting under color of state law.

## FACTS

8. On or about May 25, 2012, at or about 4:55 P.M. Defendant Jeffrey Walker obtained a search warrant for 3706 Fairmont Ave, Apartment B in Philadelphia. The warrant was obtained through the provision of false information by Defendant Walker and other Defendant Officers.

9. On that date and time, Plaintiffs were with Jared Elliot inside a friend's apartment at the aforementioned address playing video games when they heard a knock at the door. Plaintiffs did not immediately answer the door. There was a second knock at the door with an announcement of "Police!" The second knock was followed shortly by the sounds of a battering ram breaking down the apartment door.

4

10. When Defendant Officers entered, Plaintiffs were on the top floor of the apartment, which occupied the third floor of the apartment building. On sight, Defendant Officers ordered Plaintiffs to the ground. However, the officers did not give Plaintiffs adequate time to get to the ground, and instead used violent force:

    a. One Defendant Officer hit Plaintiff Barnes in the ear with his gun, exclaiming that he was not moving fast enough.

    b. Another Defendant Officer manhandled Plaintiff French, squeezing his genitalia and otherwise forcing him to the ground.

    c. A Defendant Officer struck plaintiff White on the back of his head with a gun.

11. All three men were in handcuffs when Defendant Walker entered the apartment and demanded, "Which one of you is West?" None of the Plaintiffs has ever gone by the name "West," nor do any of them know to whom Defendant Walker was referring.

12. Defendant Walker turned his attention to Plaintiff Barnes, identifying him for no particular reason as "West."

13. Defendant Walker moved in close to Plaintiff Barnes and whispered in his ear that was ringing as a result of the assault, "Did you think you were going to get all this money without me knowing?" He then queried, "Are you going to make me tear up this apartment looking for the money?"

14. Defendant Walker took approximately $220 Plaintiff Barnes had on his person, placed it in his own pocket, and said, "This is my weekend money."

15. During the exchange between Defendant Walker and Plaintiff Barnes, other officers were searching the apartment. The Defendant Officers claimed to have

5

found both firearms and drugs; this contraband, if not planted by Defendant Officers in the first place, was unknown to Plaintiffs.

16. Plaintiffs heard Defendant Walker arbitrarily tell other Defendant Officers which Plaintiff was responsible for which contraband. None actually belonged to any Plaintiff.

17. When Defendant Officers finished searching the apartment, some took Plaintiff White and Plaintiff French outside. Defendant Walker pulled Plaintiff Barnes aside and said, "I'll help you if you help me; give me a name." Plaintiff Barnes did not know what was being asked of him and did not respond. Defendant Walker subsequently warned, "Give me something on the three guys downstairs, or you are going to jail." When Plaintiff Barnes did not respond with any information, Defendant Walker replied, "Since you do not want to help me, you are going to jail."

18. Plaintiffs, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, were arrested and transported to police districts where they were each arraigned on the following false charges

    a. Manufacture, Delivery, or Possession With Intent to Deliver A Controlled Substance, pursuant to 35 P.S. §780-113;

    b. Criminal Use of Communication Facility, pursuant to 18 Pa.C.S. § 7512

    c. Conspiracy, pursuant to 18 Pa.C.S. § 903

    d. Possession of a Firearm, pursuant to 18 Pa.C.S. § 6105

    e. Firearms Not to be Carried Without a License, pursuant to 18 Pa.C.S. § 6106

    f. Possession of an Instrument of Crime, pursuant to 18 Pa.C.S. § 907

19. The Defendant Officers and other officers all gave false statements concerning the incident described in this complaint.

20. The Defendant Officers and other officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff for the incident described in this complaint. Those misrepresentations included, but were not limited to:

   a. That Defendant Walker witnessed Plaintiff Justin Barnes sell cocaine to a confidential informant on May 23, 2012, on May 24, 2012, and again on May 25, 2012 prior to arrest;

   b. that Defendant Officer Carlos Buitrago found Plaintiff Isiah White trying to hide marijuana in a toilet on the third floor when he arrested him;

   c. that Defendant Officer Gerald Passalacqua found Plaintiff Justin Barnes in a third floor bedroom attempting to throw cocaine out the window when he arrested him; and

   d. that Defendant Officer Jeffrey Galazka found Plaintiff Jahlil French throwing a gun to the ground when he was arrested.

21. Defendant Police Officers were aware of exculpatory information about the Plaintiffs.

22. The Defendant officers failed to provide exculpatory information known to them to Plaintiffs or their criminal counsel via police paperwork or any other means after their arrest.

23. The exculpatory information known to police that was not provided to the Plaintiffs included the real facts and circumstances of the incident.

24. The Defendant Officers, in anticipation of the charging of Plaintiffs, misrepresented the events that led to the arrest of the Plaintiffs. These misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Plaintiff's rights.

25. Plaintiffs obtained criminal counsel to represent them.

26. On or about May 22, 2013, Defendant Walker was arrested and charged in the United States District Court for the Eastern District of Pennsylvania for acts including, *inter alia*, "by means of actual or threatened force or violence or fear of injury, immediate and future to the victim's person, and by use of a firearm; and by use of his position as a Philadelphia Police Officer, did obtain personal property, cash and marijuana unlawfully . . . "

27. The criminal complaint against Defendant Walker described the flagrant manner in which he unwittingly disclosed to an FBI informant his practiced schemes to rob drug dealers of both drugs and money. He described the manner in which he would confiscate a large portion of a drug dealer's drugs for himself and report only a small portion of what he actually found in the police report. In addition, he described a scam to plant drugs in a drug dealer's car so that he could arrest the drug dealer, take the drug dealer's keys, and then use the dealer's keys to enter the drug dealer's apartment and steal money.

28. On or about May 21, 2013, Defendant Walker used the FBI informant to help carry out a plan to rob a drug dealer of money by planting cocaine in the dealer's car, taking the dealer's keys, and taking approximately $15,000 from the drug dealer's home.

29. On or about May 22, 2013, Defendant Walker was suspended from the Philadelphia Police force. He was eventually fired for misconduct.

30. As a result of Defendant Walker's activities as described above and his subsequent suspension, Plaintiffs' criminal cases were *nolle prossed* by the Philadelphia District Attorney's Office on June 4 & 5, 2013.

31. Plaintiffs were released from prison shortly thereafter, after each spent over twelve months in prison as a result of the Defendant Officers' misconduct.

32. As a direct and proximate result of the defendants' actions, Plaintiffs Justin Barnes, Jahlil French, and Isiah White were deprived of rights, privileges and immunities under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and, in particular, the right to be free from excessive force, the right to be free from unlawful arrest, the right to be free from unjustified searches, the right to be free from malicious prosecution, and the right to due process of law. Plaintiffs were similarly deprived of the right not to be victims of conspiracies of state actors to violate the aforementioned clearly established rights.

33. The actions and/or inactions of the defendants violated the clearly established federal constitutional rights of the Plaintiffs to freedom from use of excessive, unreasonable, and unjustified force against their person, the right to be free from malicious prosecution, and the right to due process of law.

34. All actions taken by the Defendants in this matter were taken under color of state law.

35. As a direct and proximate result of the actions and/or inactions of the Defendants

in this matter, Plaintiffs have suffered physical pain, loss of liberty, anxiety, fear, mental harm, and financial loss.

## COUNT I

### 42 U.S.C. § 1983 against Defendants Officers
### *Excessive Force*

36. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

37. Plaintiffs were damaged and injured as set forth above under 42 U.S.C. Section 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiffs' constitutional rights while acting under color of law. More specifically, Defendant Officers intentionally acted to cause a harmful and/or offensive contact with Plaintiffs' persons and such actions were the actual and proximate cause of Plaintiffs' harm.

## COUNT II

### Supplemental State Law Claim Against Defendant Officers
### *Battery*

38. Paragraphs 1 through 37 are incorporated herein by reference as though fully set forth.

39. Plaintiffs were damaged and injured as set forth above by Defendant Officers in that they intentionally acted to cause a harmful and/or offensive contact with Plaintiffs' persons and such actions were the actual and proximate cause of

Plaintiffs' harm.

## COUNT III

### 42 U.S.C. § 1983 against Defendants Officers
*Assault*

40. Paragraphs 1 through 39 are incorporated herein by reference as though fully set forth.

41. Plaintiffs were damaged and injured as set forth above under 42 U.S.C. Section 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiffs' constitutional rights while acting under color of law.   More specifically, Defendant Officers intentionally placed Plaintiffs in reasonable apprehension of imminent harmful and/or offensive bodily contact, and Defendants' actions were the actual and proximate cause of Plaintiffs' harm.

## COUNT IV

### Supplemental State Law Claim Against Defendant Officers
*Assault*

42. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

43. Plaintiffs were damaged and injured as set forth above by Defendant Officers in that they intentionally placed Plaintiffs in reasonable apprehension of imminent harmful and/or offensive bodily contact, and Defendants' actions were the actual and proximate cause of Plaintiffs' harm.

## COUNT V

### 42 U.S.C. § 1983 against Defendants Officers
#### *Unlawful Arrest*

44. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

45. Plaintiffs were damaged and injured as set forth above under 42 U.S.C. Section 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiffs' constitutional rights while acting under color of law. More specifically, Defendant Officers acted with the intent to arrest Plaintiffs unlawfully, without probable cause, and against Plaintiffs' will, and such actions were the actual and proximate cause of Plaintiffs' confinement.

## COUNT VI

### Supplemental State Law Claim Against Defendant Officers
#### *False Imprisonment*

46. Paragraphs 1 through 45 are incorporated herein by reference as though fully set forth.

47. Plaintiffs were damaged and injured as set forth above by Defendant Officers in that they acted with the intent to confine Plaintiffs unlawfully and against Plaintiffs' will, and such actions were the actual and proximate cause of Plaintiffs' confinement.

## COUNT VII

### 42 U.S.C. § 1983 against Defendants Officers
### *Unjustified Search*

48. Paragraphs 1 through 47 are incorporated herein by reference as though fully set forth.

49. Plaintiffs were damaged and injured as set forth above under 42 U.S.C. Section 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiffs' constitutional rights while acting under color of law. More specifically, Defendant Officers entered and searched the premises in which Plaintiffs had a reasonable expectation of privacy with a warrant containing material false statements, and/or without probable cause, or without an exception to the warrant requirement, searched Plaintiffs' persons, seized Plaintiffs' belongings without lawful or constitutional justification, and such action was the direct and proximate cause of Plaintiffs' harm.

## COUNT VIII

### 42 U.S.C. § 1983 against Defendants Officers
### *Malicious Prosecution*

50. Paragraphs 1 through 49 are incorporated herein by reference as though fully set forth.

51. Plaintiffs were damaged and injured as set forth above under 42 U.S.C. Section 1983 by Defendant Officers in that they, as described in detail in preceding

paragraphs, violated Plaintiffs' constitutional rights while acting under color of law. More specifically, Defendant Officers seized and arrested Plaintiffs, and instituted criminal proceedings against Plaintiffs without probable cause and with malice. These proceedings terminated in favor of the Plaintiffs. Defendants' conduct was the direct and proximate cause of Plaintiffs' harm.

## COUNT IX

### Supplemental State Law Claim Against Defendant Officers
### *Malicious Prosecution*

52. Paragraphs 1 through 51 are incorporated herein by reference as though fully set forth.

53. Plaintiffs were damaged and injured as set forth above by the Defendant Officers in that they instituted criminal proceedings against Plaintiffs without probable cause and with malice and where such proceedings were terminated in favor of the Plaintiffs.

## COUNT X

### 42 U.S.C. § 1983 against Defendants Officers
### *Conspiracy*

54. Paragraphs 1 through 53 are incorporated herein by reference as though fully set forth.

55. Plaintiffs were damaged and injured as set forth above under 42 U.S.C. Section 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiffs' constitutional rights while acting under color of

law.  More specifically, Defendant Officers, acting in concert and conspiracy, committed acts in violation of the Plaintiffs' Constitutional Rights and against the laws of Pennsylvania.  The Defendant Officers acted in conspiracy to violate the Plaintiffs' Constitutional Rights as stated in the above paragraphs, and made statements among themselves and others in order to conceal their unlawful and unconstitutional conduct.  Such actions were the direct and proximate cause of Plaintiffs' harm.

## COUNT XI

### Supplemental State Law Claim Against Defendant Officers
### *Conspiracy*

56. Paragraphs 1 through 55 are incorporated herein by reference as though fully set forth.

57. Defendant Officers acting in concert and conspiracy, committed acts in violation of the Plaintiffs' Constitutional Rights and against the laws of Pennsylvania.  The Defendant Officers made statements among themselves and others in order to conceal their unlawful and unconstitutional conduct.

## COUNT XII

### Supplemental Claim of Intentional Infliction of
### Emotional Distress against All Defendant Officers

58. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.

59. Plaintiffs were damaged and injured as set forth above by Defendant Officers in

that they intentionally and/or recklessly caused Plaintiffs severe emotional distress by their extreme and outrageous conduct.

## COUNT XIII

### Supplemental Claim of Negligent Infliction of Emotional Distress against All Defendant Officers

60. Paragraphs 1 through 59 are incorporated herein by reference as though fully set forth.

61. Plaintiffs were damaged and injured as set forth above by Defendant Officers in that they negligently caused Plaintiffs severe emotional distress by their extreme and outrageous conduct and where Plaintiff's emotional distress resulted in the manifestation of physical symptoms.

## COUNT XIV

### 42 U.S.C. Section 1983 against Defendant City of Philadelphia

62. Paragraphs 1 through 61 are incorporated herein by reference as though fully set forth.

63. Plaintiffs were damaged and injured as set forth above under 42 U.S.C. Section 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiffs' constitutional rights while acting under color of law. Prior to May 25, 2012, the City of Philadelphia developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiffs' rights.

16

64. It was the policy and/or custom of the City of Philadelphia to cover-up and avoid detection of improper and illegal police activity, including excessive force, unlawful detention, failure to intervene against other Officers' illegal conduct, false imprisonment, assault and battery, and infliction of emotional distress.

65. It was the policy and/or custom of the City of Philadelphia to fail to sufficiently supervise against, train and/or re-train against, and discipline against illegal police activity, including but not limited to excessive force, unlawful detention, failure to intervene against other Officers' illegal conduct, assault and battery, false imprisonment, and infliction of emotional distress.

66. There has been a longstanding history, which has been extensively documented since the 1980s, of Philadelphia Police Officers engaging in rampant illegal conduct in narcotics investigations.    A non-exhaustive list of such conduct includes:

    a. In the early 1980s, in the "One Squad Scandal," a group of Philadelphia narcotics Officers were convicted of selling drugs that they had stolen from dealers.

    b. During the decade between 1980-1989, a lieutenant and three officers from another drug unit, the "Five Squad," engaged in conduct including the theft of drugs and over $280,000.00 that resulted in federal convictions for, *inter alia*, racketeering.

    c. In or around February 1995, Philadelphia Police Officer John Baird and five other members of the 39th Police District were federally prosecuted and ultimately sentenced for violating the rights of, and stealing money from, over

40 Philadelphians. These Officers planted drugs on innocent individuals, conducted unreported raids, and stole from suspects.

d.  In 1997, federal drug convictions were overturned as a result of a 1998 internal affairs finding that narcotics officer John Boucher was a potentially corrupt police officer.

e.  In the last five years, numerous narcotics officers -- including, as described *supra*, some and/or all of the Defendant Officers in this matter -- have engaged in conduct causing them to have been removed from the narcotics assignments. In the last five years, as the result of a series of articles by Philadelphia Daily News reporters known as "Tainted Justice," Philadelphia Police Officers Jeffrey Cujdik, Richard Cujdik, Robert McDonnell, Thomas Tolstoy, Joseph Bologna, and Thomas Deabler have all been assigned to either desk duty or non-narcotics related assignments. Those officers engaged in raids of small convenience shops in Philadelphia in which they disabled surveillance systems to hide their conduct, which included theft of cash and groceries. Jeffrey Cujdik routinely alleged criminal behavior in search warrants involving a confidential informant who subsequently denied having provided information or services on many of the cases in which Cujdik affirmed he had.

f.  In a letter dated December 3, 2012, the District Attorney of Philadelphia, Seth Williams, announced that in an exercise of "prosecutorial discretion," his office would refuse to prosecute, charge cases, or approve any search or arrest warrants in which the following officers, many of whom had worked

18

extensively with Defendant Walker, are or were involved:

    i.  Police Officer Thomas Liciardello;

    ii.  Police Officer Brian Reynolds;

    iii.  Police Officer John Speiser;

    iv.  Police Officer Michael Spicer;

    v.  Police Officer Perry Betts; and

    vi.  Lieutenant Robert Otto.

This decision rested on knowledge that some and/or all of the aforementioned Officers had engaged in conduct raising questions about their integrity and law-abidingness while on duty. At the time of this incident, and for some years before, law enforcement at the highest levels knew of integrity, corruption, and civil rights violation issues involving some and/or all of the defendant officers. Federal agents and federal prosecutors knew. The current Philadelphia Police Commissioner, his predecessors, and some of his subordinates knew. Former District Attorney Lynn Abraham and some of her subordinates, as well as her successor in office knew. The basis of this knowledge was information from multiple sources including, but not limited to, federal investigations, internal investigations, questions raised by state and federal prosecutors, and other sources.

67. It was the policy and/or custom of The City of Philadelphia to inadequately supervise and train its Police Officers, including the Defendant Officers, against a code of silence or "blue code" of Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful

misconduct committed by their fellow Officers.

68. As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

## COUNT XV

### Supplemental Claim of Negligent Hiring, Retention, and Supervision against Defendant City of Philadelphia

69. Paragraphs 1 through 68 are incorporated herein by reference as though fully set forth.

70. Defendant City of Philadelphia failed to exercise reasonable care in the hiring, retention, and supervision of the Defendant Police Officers with such failure being the direct and proximate cause of Plaintiffs' injuries.

## DAMAGES

71. Paragraphs 1 through 70 are incorporated herein by reference as though fully set forth.

72. As a result of the above actions and claims, the Plaintiff demands judgment against all defendants in the amount of all damages, including:

    a.  compensatory damages;

    b.  punitive damages;

    c.  interest;

      d.  injunctive relief;

      e.  such other relief as appears reasonable and just; and

      f.  reasonable attorney fees and costs under 42 U.S.C. § 1988.


_____

**Lloyd Long III, Esq.**


_____

**Lawrence S. Krasner, Esq.**


**KRASNER, HUGHES & LONG, LLC**
**Attorneys for Plaintiffs**
**1221 Locust Street**
**Philadelphia, PA 19107**
**(215) 731-9500 (p)**
**(215) 731-9908 (f)**


**Date:** _October 1, 2013_